1
2
3
4
5
6
7
8

# UNITED STATES DISTRICT COURT

9

## SOUTHERN DISTRICT OF CALIFORNIA

10

| | |
|---|---|
| 11 TRUSTEES OF THE SEIU LOCAL 12 1877 AND SAN DIEGO COUNTY EMPLOYERS SECURITY TRUST 13 FUND, | CASE NO. 10-CV-2125 W (BGS) **ORDER GRANTING-IN-PART AND DENYING-IN-PART PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT [DOC. 9]** |

11 TRUSTEES OF THE SEIU LOCAL
12 1877 AND SAN DIEGO COUNTY
EMPLOYERS SECURITY TRUST
13 FUND,

14                                    Plaintiff,

15      vs.

16 KLEENHOUSE BUILDING
17 MAINTENANCE, INC.,

18                                    Defendant.

19

CASE NO. 10-CV-2125 W (BGS)

**ORDER GRANTING-IN-PART
AND DENYING-IN-PART
PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT
[DOC. 9]**

20      Pending before the Court is Plaintiff Trustees of the Service Employees

21 International Union ("SEIU") Local 1877 and San Diego County Employers Security

22 Trust Fund's ("Trustees") summary-judgment motion against Defendant Kleenhouse

23 Building Maintenance, Inc. ("KBM"). KBM opposes the motion.

24      The Court decides the matter on the papers submitted and without oral

25 argument. <u>See</u> Civ. L.R. 7.1(d.1). For the following reasons, the Court **GRANTS**

26 Plaintiffs' summary-judgment motion on the issue of KBM's contractual obligation to

27 submit to the audit, but **DENIES** Plaintiffs' request for an order requiring KBM to

28 unconditionally produce the requested documents.

1   I.   **BACKGROUND**

2   The SEIU Local 1877 and San Diego County Employers Security Trust Fund is

3   an express trust created by Collective Bargaining Agreements ("CBAs") between the

4   SEIU Local 1877 ("Union") and various employers.  (*Compl.* ¶ 3 [Doc. 1].)  The trust

5   is a multi-employer benefit plan within the meaning of the Employee Retirement

6   Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1002(37)(A).  (*Id.*)  Plaintiff

7   Trustees are the trustees and fiduciaries of the trust.  (*Id.* ¶ 4.)  Defendant KBM is a

8   national janitorial and maintenance service company.  (*Def.'s Opp'n* 3:3–4 [Doc. 11].)

9   Some of the sites KBM services are union sites, and some of the union members at those

10  union sites are members of the SEIU Local 1877.  (*Id.* at 3:5–6.)

11  In 2005, the Union and KBM entered into a CBA effective July 2, 2005 through

12  May 31, 2008.  (*See Bautista Decl. Ex.* C [Doc. 9-2].)  In 2006, the parties executed a

13  Trust Acceptance and Contract Data Form ("Trust Acceptance").  (*See Bautista Decl.*

14  *Ex.* A.)  At the time KBM signed the Trust Acceptance, approximately 35 of its 193

15  total employees were SEIU Local 1877 members covered by the CBA.  (*Id.*)  In signing

16  the Trust Acceptance, both parties acknowledged the existence of the CBA and

17  "agree[d] to be bound by the Agreement and Declaration of Trust of the SEIU Local

18  1877 and San Diego County Employers Security Trust Fund ["Trust Agreement"]

19  currently in effect, and all changes, amendments, restatements and other alterations

20  thereof, and all the rules and regulations of the Trust Fund."  (*Id.*)

21  The Trust Agreement was drafted in 2002.  (*See Bautista Decl. Ex.* B at vi.)

22  Although KBM agreed to be bound by the Trust Agreement when it signed the Trust

23  Acceptance, KBM did not sign the Trust Agreement.  (*Def.'s Opp'n* 3:21–25.)  KBM

24  also was not provided with a copy of the Trust Agreement or any current or future

25  amendments to it.  (*See Tucker Decl. Ex.* 9 [Doc. 11-1].)

26  //

27  //

28  //

Article III, Section 6 of the Trust Agreement governs the Trustees' authority to audit employers. (*Bautista Decl. Ex. B* at 9.) Effective January 1, 2006, this section was amended. (*See Bautista Decl. Ex. B*.) The amended section reads in relevant part:

> The Board of Trustees has the power to require any Employer, signatory Association, Union, any employee, any medical or other service provider, or any participant or beneficiary under the Benefit Plans, to submit to it any information, data, or documents relevant to and suitable for the purposes of the Board's administration of the Benefit Plans.
>
> *The following are only some examples of documents and information which are relevant and suitable for the purposes of the Board's administration of the Benefit Plans, and must be produced by Employers subject to an employer audit by the Trust; such documents and information which must be produced include information and records pertaining not only to employees concededly covered by the Benefit Plans but those pertaining to persons who the employer claims are not so covered: All payroll records and employee records, including but not limited to . . . 1099 and 1096 forms, . . . vendor's invoices, . . . [and] accounts payable journals . . .*
>
> The parties to this Trust Agreement agree that they will use their best efforts to secure compliance with any reasonable request of the Board for any such information, data, reports or documents. The Trustees shall have the right themselves or through any authorized representative, to *enter upon the premises of, and* audit the books and records of, any Employer as may be necessary to determine if all liabilities of such Employer to the Trustees have been paid, and to determine that the correct contributions have been received for all persons for whom the Employer is required to make contributions. The Employer shall make such books and records available at all reasonable times and places so that such audits may be conducted.

(*Id.*) (Language added per the 2006 amendment has been italicized.)

On May 13, 2010, National Compliance Services ("NCS")—a company hired by the Trustees to audit KBM—sent a letter to KBM requesting documents necessary to complete an audit on behalf of the Union. (*Byerley Decl.* ¶ 2; *Ex. 18* [Doc. 11-3].) From May until September 2010, KBM provided all the documents requested by NCS. (*Byerley Decl.* ¶¶ 3–4.) On September 22, 2010, NCS sent KBM an e-mail requesting three new documents: a complete list of KBM's work locations, a list of KBM's 1099 forms, and KBM's vendor list/accounts payable ("the disputed documents"). (*Id.* ¶ 4.) Shortly after receiving NCS's e-mail, KBM received a letter from the Union's counsel dated September 21, 2010. (*Id.* ¶ 5; *Ex. 4*.) The letter requested that KBM send the

disputed documents by September 27, 2010, or the Trustees would "initiate a lawsuit against KMB [sic] without further notice." (*Byerley Decl. Ex. 4.*)

KBM was concerned about providing the disputed documents, and wanted to obtain legal advice before producing the documents. (*Byerley Decl.* ¶¶ 6, 8.) Furthermore, KBM's human services director, who was in charge of responding to the audit, was out of the office for much of the period between September 21, 2010, and October 15, 2010. (*Id.* ¶¶ 1, 4, 6.) Consequently, KBM did not turn over the disputed documents by September 27, 2010. By October 15, 2010, the disputed documents were the only documents requested by NCS that KBM had not yet turned over for the audit. (*Byerley Decl. Ex. 5.*) However, unbeknownst to KBM, the Trustees had filed a complaint on October 12, 2010. (*Id.* ¶ 9.)

On November 15, 2010, KBM answered the complaint. On January 3, 2011, an Early Neutral Evaluation ("ENE") was held before United States Magistrate Judge Bernard G. Skomal. (*Tucker Decl. Ex. 14.*) During the ENE, Magistrate Judge Skomal tentatively recommended that the Trustees and KBM enter into a protective order. (*Id.*) However, the Trustees have resisted efforts to negotiate a protective order.[1] (*See id.*)

On February 1, 2011, the Trustees filed this summary-judgment motion pursuant to Federal Rule of Civil Procedure 56(c) on the grounds that the plain language of the CBA, Trust Acceptance, and Trust Agreement mandate that KBM submit to the audit and provide the requested documents without the benefit of a protective order. KBM opposes. On February 28, 2011, the Trustees filed a timely reply.

//

//

//

---

[1]The Trustees indicate in their motion that they would "have no objection to the Court's order compelling an audit" pursuant to certain "provisions" suggested in the motion; however, these provisions fail to address the concerns KBM raises.

1   **II.    LEGAL STANDARD**

2       Summary judgment is appropriate under Rule 56(c) where the moving party

3   demonstrates the absence of a genuine issue of material fact and entitlement to

4   judgment as a matter of law.  See Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477

5   U.S. 317, 322 (1986).  A fact is material when, under the governing substantive law, it

6   could affect the outcome of the case.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242,

7   248 (1986); Freeman v. Arpaio, 125 F.3d 732, 735 (9th Cir. 1997).  A dispute about a

8   material fact is genuine if "the evidence is such that a reasonable jury could return a

9   verdict for the nonmoving party."  Anderson, 477 U.S. at 248.

10      A party seeking summary judgment always bears the initial burden of establishing

11  the absence of a genuine issue of material fact.  Celotex, 477 U.S. at 323.  The moving

12  party can satisfy this burden in two ways: (1) by presenting evidence that negates an

13  essential element of the nonmoving party's case; or (2) by demonstrating that the

14  nonmoving party failed to make a showing sufficient to establish an element essential

15  to that party's case on which that party will bear the burden of proof at trial.  Id. at

16  322–23.  "Disputes over irrelevant or unnecessary facts will not preclude a grant of

17  summary judgment."  T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n, 809 F.2d

18  626, 630 (9th Cir. 1987).

19      "The district court may limit its review to the documents submitted for the

20  purpose of summary judgment and those parts of the record specifically referenced

21  therein."  Carmen v. San Francisco Unified Sch. Dist., 237 F.3d 1026, 1030 (9th Cir.

22  2001).  Therefore, the court is not obligated "to scour the record in search of a genuine

23  issue of triable fact."  Keenan v. Allen, 91 F.3d 1275, 1279 (9th Cir. 1996) (citing

24  Richards v. Combined Ins. Co. of Am., 55 F.3d 247, 251 (7th Cir. 1995)).  If the moving

25  party fails to discharge this initial burden, summary judgment must be denied and the

26  court need not consider the nonmoving party's evidence.  Adickes v. S.H. Kress & Co.,

27  398 U.S. 144, 159–60 (1970).

28  //

If the moving party meets this initial burden, the nonmoving party cannot defeat summary judgment merely by demonstrating "that there is some metaphysical doubt as to the material facts."  Matsushita Electric Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986); Triton Energy Corp. v. Square D Co., 68 F.3d 1216, 1221 (9th Cir. 1995) ("The mere existence of a scintilla of evidence in support of the nonmoving party's position is not sufficient.") (citing Anderson, 477 U.S. at 242, 252).  Rather, the nonmoving party must "go beyond the pleadings" and by "the depositions, answers to interrogatories, and admissions on file," designate "specific facts showing that there is a genuine issue for trial.'"  Celotex, 477 U.S. at 324 (quoting Fed. R. Civ. P. 56(e)).

When making this determination, the court must view all inferences drawn from the underlying facts in the light most favorable to the nonmoving party.  See Matsushita, 475 U.S. at 587.  "Credibility determinations, the weighing of evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge, [when] he [or she] is ruling on a motion for summary judgment."  Anderson, 477 U.S. at 255.

III.   **DISCUSSION**

A.   **No Genuine Issue of Material Fact Exists as to KBM's Contractual Obligation to Submit to the Audit.**

The Trustees claim in their summary-judgment motion that "KBM does not dispute its contractual obligation to submit to the Trustees' audit." (*Mot. for Summ. J.* 2:22–23 [Doc. 9-1]).  Indeed, KBM admits that it has "attempted in good faith to comply with *its audit obligations*." (*Def.'s Opp'n* 23:18) (emphasis added).  Since the parties both agree that KBM has a contractual duty to submit to the audit, summary judgment in favor of the Trustees on this narrow issue is appropriate.

//
//
//

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**B.** **KBM Must Provide the Disputed Documents; However, KBM Is Entitled to a Protective Order.**

The Trustees argue that the plain language of the CBA, the Trust Acceptance, and the Trust Agreement compel KBM to produce the disputed documents without the benefit of a protective order. KBM claims that the requested documents are at least private information, if not trade secrets, and consequently a protective order is appropriate. The Court agrees with KBM.

The Supreme Court has held that a court may order an employer to submit to a union's requested audit—including an audit of documents pertaining to non-covered employees—under ERISA. Cent. States, Se. & Sw. Areas Pension Fund v. Cent. Transp., Inc., 472 U.S. 559, 564, 574 (1985). However, the Court also cautioned that a union's right to an audit is qualified, since the "right to demand access to employer records does not reach beyond what is appropriate for the proper administration of the plans, and, of course, a court ordering an employer to comply with a particular audit demand could, upon a proper showing by the employer, limit the auditors accordingly." Id. at 582 n.23.

Indeed, the case law is replete with examples of courts ordering audits but placing reasonable limits on access to the requested information in order to protect employers' privacy concerns. For instance, the Sixth Circuit has stated that "[i]f a showing of prospective harm to the Employers were made, the district court could enter a protective order which limits the Trustees to reading the disputed records in the Employer's office or specifies that an independent accountant view disputed records without disclosing the information to Trustees." DeMarco v. C & L Masonry, Inc.. 891 F.2d 1236, 1240 (6th Cir. 1989). The Second Circuit, in affirming a union's right to an audit, nonetheless confirmed the lower court's admonition that "the audit should not be wholly unbridled" and acknowledged the defendant's right to move for a protective order. N.Y. State Teamsters Conf. Pension & Ret. Fund v. Boening Bros., Inc., 92 F.3d 127, 130, 134 (2d Cir. 1996). One district court ordered that an audit be conducted on

10cv2125w

the employer's premises with the employer and his counsel present, and that the auditor not remove or copy records of non-covered employees nor disclose information to third parties without a court order.  Cent. States, Se. & Sw. Areas Pension Fund v. N.E. Friedmeyer-Sellmeyer Distrib. Co., 650 F. Supp. 978, 980–81 (E.D. Mo. 1987). Another district court, discussing the protective measures suggested in Friedmeyer, suggested the employer's privacy concerns could be alleviated by ordering the parties to draft a protective order to be submitted for the court's approval.  Trucking Emps. of N. Jersey Welfare Fund, Inc. v. Brockway Fast Motor Freight Co., 130 F.R.D. 314, 324 (D.N.J. 1989).

In sum, this authority stands for the principle that a court may issue a protective order in recognition of an employer's legitimate privacy concerns—despite the fact that the CBA governing the relationship between the union and the employer may not contemplate such a measure—where such a protective order does not interfere with the successful completion of the audit.  The Trustees have failed to explain why they or the Union need direct access to the disputed documents; consequently, the Court sees no reason why the audit cannot be successfully completed pursuant to a protective order restricting access to the requested documents to the auditor.

Furthermore, since the Trustees hired the auditor, the Court is not concerned that KBM's desire to restrict access to the disputed documents is a way to hide the ball. To the contrary, KBM has complied—with the exception of producing the disputed documents—with the audit request, and KBM has expressed its willingness to hand the disputed documents over to NCS pursuant to a protective order.  These actions suggest that KBM is legitimately concerned about protecting its business records and belie any finding of bad faith.  In light of these considerations, the Court finds that a protective order is reasonable, despite not being expressly provided for or contemplated in the documents governing the relationship between the Union and KBM.

//

//

10cv2125w

**IV.** CONCLUSION

For the foregoing reasons, the Court **GRANTS** the Trustees' summary-judgment motion [Doc. 9] on the issue of KBM's contractual obligation to submit to the audit, but **DENIES** the Trustees' request for an order requiring KBM to produce the disputed documents unconditionally.

The Court further **ORDERS** that within 30 days of the date of this order, the parties meet and confer regarding the terms and scope of a protective order for the disputed documents.  The parties shall then contact United States Magistrate Judge Bernard G. Skomal to formalize the terms of the protective order or to resolve any disputes relating to the protective order.

**IT IS SO ORDERED.**

DATED:  July 22, 2011

_____
Hon. Thomas J. Whelan
United States District Judge

10cv2125w